**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **NO. 23-CR-516-001** |
| | § | |
| **JEREMIAH YZAGUIRRE,** | § | |
| **Defendant** | § | |

**UNITED STATES' RESPONSE TO DEFENDANT'S SUPPLEMENTAL RESPONSE TO GOVERNMENT'S NOTICE OF BREACH OF PLEA AGREEMENT AND ITS POSITION REGARDING SENTENCING**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

The United States submits this reply to address the defendant's asserted authorization to dispose of assets notwithstanding his plea-agreement obligations, the disputed sentencing enhancements including the adjustment for ten or more victims, production of another means of identification, vulnerable victims, and abuse of a position of trust. This reply also addresses the defendant's ineligibility for the zero-point offender reduction and counters the defendant's factual objections regarding his characterization of the fraudulent W-2 as an unused draft and the number of graphic processing units (GPU's) seized by the Government. Finally, this reply addresses the false accusations by defense of withholding of discovery made during the September 22, 2026, sentencing hearing.

**I. The August 2023 bond argument did not authorize the defendant's subsequent noncompliance with his plea agreement.**

On August 28, 2023, the defendant appeared before the United States Magistrate Judge Ignacio Torteya III for arraignment and detention hearing. After the defendant waived a reading of the indictment and entered a plea of not guilty, the Court addressed the conditions of release. Defense counsel represented that all of the defendant's assets had been seized and argued that the proposed $100,000 bond, requiring a ten percent cash deposit, would impose a substantial financial strain because the defendant was relying on friends and relatives for support. Counsel reiterated that position unequivocally: "He has no assets that he can go ahead and attach." ECF No. 130-1 at 15:2-4.

The government disputed that representation and identified financial resources and assets relevant to the Court's bond determination. ECF No. 130-1 at 10:10–18. Within that discussion, the prosecutor identified numerous assets the defendant failed to disclose, among them, valuable memorabilia, including a hoverboard, as property that "could be sold to cover bond." Id. at 11:25–12:15.

The government acknowledges that wording. The issue is the meaning the defendant now assigns to it. An observation that property could be sold to fund bond does not establish continuing authorization for a later disposition without compliance with subsequently undertaken plea-agreement obligations.

The magistrate judge's explanation confirms the context. Addressing defense counsel, the Court stated that the government was identifying assets that had not been disclosed to Probation and, consequently, to the Court. Id. at 16:6–10. The prosecutor likewise concluded her argument by explaining that the defendant had been less than forthcoming concerning available assets and should be required to post bond. Id. at 13:23–14:5. The discussion concerned financial capacity and disclosure in connection

with pretrial release. Read in context, the transcript does not establish the permission the defendant claims.

## II. The defendant's proposed interpretation does not establish an exception to the later plea agreement.

Even assuming the August 2023 statement could be understood as government acquiescence in a sale to fund the bond then under consideration, the defendant identifies no language extending that acquiescence to a later transaction undertaken after execution of his plea agreement. Nor does he identify any reservation in the plea agreement exempting the hoverboard or other memorabilia from its financial provisions.

The relevant question is whether the defendant complied with the obligations governing his conduct when the post-plea disposition occurred. The supplemental response identifies no approval directed to that transaction under the plea agreement. Its assertion that the government never "took back" its earlier statement does not supply such approval. The government was not required to retract a bond argument to make the defendant's subsequently accepted contractual obligations effective.

## III. The purported permission does not answer the separate disclosure requirements.

The defendant's argument also conflates permission to dispose of property with the duty to provide financial information. Those obligations must be evaluated separately under the agreement's terms.

Even if the Court accepted the defendant's characterization of the bond-hearing statement, that would not establish permission to omit required financial information or

withhold required updates concerning a sale or its proceeds. Nothing in the cited exchange addresses, much less excuses, those disclosure obligations. To the extent the September record established such failures, the supplemental response supplies no basis to disregard them.

## IV. The absence of the hoverboard from an itemized forfeiture list does not establish contractual permission.

The defendant also emphasizes that the hoverboard was not specifically identified for forfeiture. But the scope of the plea agreement's financial obligations is determined by their language. A provision covering assets generally does not require each covered item to be separately named. The absence of a particular item from a forfeiture inventory therefore does not establish an exception to an otherwise applicable disclosure or disposition provision.

## V. Correction of the Government's Prior Position

In its initial response to the defendants' objections, the Government agreed that the two-level increase under U.S.S.G. §2B1.1(b)(2)(A)(i) did not apply, accepting the argument that the health care program was the scheme's only victim because the beneficiaries themselves sustained no apparent financial loss. Upon further review of controlling Fifth Circuit authority, the Government determined that this position was legally incorrect and advised defense counsel and the Court of its corrected position at September 22, 2026, sentencing hearing. The Government acknowledges that its change in position required additional consideration by the defense and the Court. The correction

was intended to ensure an accurate application of the Guidelines, not to frustrate the proceedings or disadvantage the defendants.

## VI. Ten or More Victims—U.S.S.G. §2B1.1(b)(2)(A)(i)

The two-level increase under U.S.S.G. §2B1.1(b)(2)(A)(i) applies because the offense involved at least ten beneficiaries whose identifying information was unlawfully used to submit fraudulent claims. In cases involving means of identification, Application Note 4(E) includes within the definition of "victim" an individual whose means of identification was used unlawfully or without authority; personal financial loss is therefore unnecessary. In *United States v. Barson*, 845 F.3d 159, 167 (5th Cir. 2016), the Fifth Circuit held that Medicare beneficiaries for whom conspirators falsely claimed benefits qualified as victims under this provision. *United States v. Kalu*, 936 F.3d 678, 683 (5th Cir. 2019), reaffirmed that holding and rejected the contention that Medicare alone was the victim. Here, the fraudulent use of identifying information belonging to at least ten beneficiaries satisfies the enhancement.

## VII. Production of Another Means of Identification—U.S.S.G. §2B1.1(b)(11)(C)(i)

The Government maintains that the two-level increase under §2B1.1(b)(11)(C)(i) also applies. In *Kalu*, the Fifth Circuit upheld this enhancement where the defendant unlawfully used beneficiaries' Medicare information to submit fraudulent claims that generated unique claim numbers tied to particular beneficiaries. 936 F.3d at 681–83. The court rejected the argument that the administrative generation of those numbers fell outside the enhancement merely because the defendant's objective was reimbursement rather than creation of another identifier. Here, the defendants likewise used beneficiaries'

identifying information to submit false claims that generated unique claim numbers linked to the respective beneficiaries and served as the basis for reimbursement. The beneficiaries' identifying information constituted the first means of identification, and the resulting beneficiary-linked claim numbers constituted the other means of identification. The same reasoning therefore supports application of the enhancement.

## VIII. Vulnerable Victims—U.S.S.G. §3A1.1(b)(1)

The Government requests the two-level adjustment under §3A1.1(b)(1). That provision requires proof that a victim was unusually vulnerable because of age, physical or mental condition, or particular susceptibility to the criminal conduct, and that the defendant knew or should have known of that vulnerability.

The Government's request rests on the defendants' exploitation of beneficiaries whose particular impairments reduced their ability to discover or challenge the fraudulent use of their identifying information. The absence of unnecessary medical procedures or personal financial loss does not alone resolve the adjustment. In *United States v. Myers*, 772 F.3d 213, 220–21 (5th Cir. 2014), the Fifth Circuit upheld the adjustment where the defendant used nursing-home residents' identities to obtain fraudulent tax refunds, although the residents sustained no pecuniary loss. *Myers* recognizes that the relevant inquiry includes the victim's impaired capacity to detect or prevent the crime.

Here, the Government does not rely solely on Medicare eligibility or wheelchair use alone. The facts show that the defendants knew of the beneficiaries health limitations. As the PSR provides, some beneficiaries suffered from physical ailments, such as dementia or Parkinson's. This vulnerability substantially limited those beneficiaries' ability

to recognize that the claimed parts or repairs had not been provided and to dispute the resulting claims making them more susceptible to fraudsters like the Yzaguirres. These circumstances support a finding that the defendants knowingly exploited unusually susceptible individuals through the fraudulent use of their identifying information.

## IX. Zero Point Offender Adjustment—U.S.S.G. §4C1.1

The defendant is ineligible for the two-level reduction under U.S.S.G. §4C1.1 because, as explained above, the vulnerable-victim adjustment under §3A1.1(b)(1) applies. Section 4C1.1 requires satisfaction of all its eligibility criteria, including subsection (a)(9), which excludes a defendant who receives an adjustment under §3A1.1. Here, the Government maintains that the defendant knowingly exploited beneficiaries whose particular cognitive or functional impairments diminished their ability to detect or challenge the fraudulent use of their identifying information. Upon applying §3A1.1(b)(1), the Court should therefore deny the §4C1.1 reduction, notwithstanding the defendant's absence of criminal history points.

## X. Abuse of Position of Trust—U.S.S.G. §3B1.3

The two-level adjustment under U.S.S.G. §3B1.3 is warranted because the defendant abused a position of trust in a manner that significantly facilitated the commission of the offense. The Fifth Circuit applies a two-part inquiry: whether the defendant occupied a position of trust and whether the defendant used that position to significantly facilitate or conceal the offense. *United States v. St. Junius*, 739 F.3d 193, 209 (5th Cir. 2013). A durable medical equipment supplier's owner may occupy such a

position because Medicare relies on the provider's discretion and truthful representations when processing reimbursement claims. Id.; *United States v. Miller*, 607 F.3d 144, 148–50 (5th Cir. 2010). The Fifth Circuit has consistently upheld the adjustment where enrolled providers exercised substantial discretion to submit claims with minimal supervision. *United States v. Read*, 710 F.3d 219, 233 (5th Cir. 2012).

Here, Southwest Medical's Medicare enrollment enabled the defendant, through his authority over the business and its reimbursement submissions, to obtain payment for purported power mobility device repairs, parts, and services. Medicare relied on the accuracy of those submissions without independently verifying each claimed item or service before payment. The defendant exploited that reliance by knowingly causing claims to be submitted for products and services never provided. His managerial authority and access to the Medicare reimbursement process placed him in a position to perpetrate the fraud and significantly facilitated its execution. Accordingly, the adjustment rests on the defendant's abuse of entrusted authority, rather than merely on his participation in a fraudulent transaction.

## XI. Factual Objection Regarding Fraudulent W-2

The defendant's characterization of the W-2 as an unused "draft" is contradicted by his own contemporaneous communications. The Government does not contend that the wages reflected on the document were actually paid. The falsity lies in representing that MGV earned $44,999.76 from Modern Visual Media, LLC, and using that representation to support an application for a Paycheck Protection Program ("PPP") loan.

The defendant's assertion that the document was merely prepared for possible future use does not withstand examination of the records.

The Government submits **Exhibit 1**, text messages between the defendant and MGV, in which the defendant proposed listing her as a 2019 employee to obtain government assistance purportedly intended to pay employees. He requested her address and Social Security number, stated that he would generate the necessary forms, and offered her a kickback of half the resulting funds in exchange for using her information.

The Government also submits **Exhibit 2**, an email thread between the defendant and Lupita Borrego dated May 21, 2021, including the defendant's email sent at 3:46 a.m. with the subject line "Application 9 Modern Visual Media LLC." That email supplied business and payroll information and transmitted five W-2s, including the W-2 bearing MGV's identifying information and purported earnings.

These communications establish that the W-2 was transmitted as supporting documentation for a PPP loan application—not simply retained as an unused draft. The resulting loan in the amount of $45,700 was fully funded and subsequently forgiven, constituting a financial loss to the Government. The defendant's emphatic assertion that the document was "NEVER issued" does not account for his own email transmitting it for use in the application. The Government respectfully requests that the Court consider Exhibits 1 and 2, overrule the objection, and retain the challenged factual statement in the PSR.

## XII. Factual Objection Regarding Seized GPUs

The defendant disputes the reported quantities of seized graphics processing units ("GPUs"), asserting that 357 RTX A2000 units and 261 RTX A4500 units were seized, rather than 297 and 252, respectively. The Government has not been provided with, and cannot evaluate, the purported "defendant's records of seized items" supporting those figures. More fundamentally, the defendant's contention that additional GPUs represent appreciated Bitcoin value conflates computer hardware with cryptocurrency. Agents seized new GPUs in their factory packaging; GPUs operating at the premises were left in place. Although GPUs can perform calculations used in mining certain virtual currencies, possession of a GPU does not establish ownership of cryptocurrency or a corresponding cryptocurrency balance. The seized units therefore represent hardware whose value depends on the amount obtainable through resale, not the market price of Bitcoin. Any supported correction to the inventory should be considered on its merits, but an increased hardware count does not establish additional Bitcoin holdings or a corresponding reduction in the Government's loss.

## XIII. Discovery Production by Government for September 22, 2026, Sentencing Hearing

At the September 22, 2026, sentencing hearing, defense counsel accused the Government of a "pattern" of intentionally withholding information and asserted that the flash drive provided to the defense did not contain the emails referenced by the Government. The documented discovery record contradicts that assertion. On August 10, 2026, defense counsel signed an "Acknowledgment of Receipt of Discovery" that includes

two screenshots identifying the files provided. See **Exhibit 3**. The correspondence between Jeremiah Yzaguirre and Prop Store is located under the file name "Trial Subpoenas B-23-CR-516" > "Propstore of London."

The materials supporting Exhibits 1 and 2 to this reply were likewise provided in discovery and are located within the file named "Jeremiah Izaguirre loan fraud discovery" > PDF "Serial 35 interview of Michelle Gomez Vela(att.2)" for Exhibit 1 and file "GJ Serial 6 - GJ subpoena return from Texas National Bank" > "BSA Research" > "Jeremiah Yzaguirre" > Jeremiah@southwestdme.com > "From" > "Application 9 – Modern Visual Media LLC (5.40 MB).msg" for Exhibit 2. The Government submits counsel's signed acknowledgment and the accompanying file screenshot for the Court's consideration. Counsel's reported inability to locate these materials does not establish that they were withheld, much less intentionally withheld. The Government respectfully requests that the Court reject the allegation as unsupported by the documented production record.

## XIV. Conclusion

For these reasons, the United States respectfully requests that the Court reject the authorization theory asserted in the defendant's supplemental response and leave its prior finding of breach undisturbed; apply the two-level increases under U.S.S.G. §2B1.1(b)(2)(A)(i) for ten or more victims and §2B1.1(b)(11)(C)(i) for the unauthorized use of a means of identification to produce or obtain another means of identification; apply the two-level adjustments under §3A1.1(b)(1) for vulnerable victims and §3B1.3 for abuse of a position of trust; deny the two-level reduction under §4C1.1 because application of the vulnerable-victim adjustment renders the defendant ineligible; and overrule the

defendant's factual objection concerning the fraudulent W-2 documentation and seized GPUs.

Respectfully submitted,

AARON F. REITZ
United States Attorney

BY: *s/ Ana C. Cano*

ANA C. CANO
Assistant United States Attorney
United States Attorney's Office
Southern District of Texas
600 E. Harrison
Brownsville, Texas 78520

**CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2026, I electronically filed the foregoing document with the clerk for the U.S. District Court, Southern District of Texas, using the electronic case filing system of the court. I have also provided the document to attorney for defendant by electronic means.

*s/ Ana C. Cano*

Ana C. Cano
Assistant United States Attorney